UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADEL G., | : | |
| Petitioner, | : | Civ. No. 19-13512 (KM) |
| v. | : | |
| WARDEN, ESSEX COUNTY JAIL, | : | OPINION |
| Respondent. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.   INTRODUCTION

Petitioner, Adel G.,[1] is an immigration detainee currently held at the Essex County Correctional Facility, in Newark, New Jersey. Through counsel, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On March 13, 2020, I granted the petition to the extent of ordering that Petitioner receive a bond hearing. After a hearing, the Immigration Judge ("IJ") denied bond, and the Board of Immigration Appeals ("BIA") affirmed. Petitioner now moves to enforce the writ of habeas corpus, arguing that the IJ and BIA proceedings did not comport with due process. For the following reasons, the motion will be denied.

## II.   BACKGROUND

a.   **Underlying Circumstances**

Petitioner is a native and citizen of Yemen. (DE 9-1 at 3.) On May 21, 2003, Petitioner was granted Lawful Permanent Resident ("LPR") status in the United States. (*Id.*) On or about February 21, 2017, after having been outside of the United States for over one year, Petitioner

---

[1]   Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

attempted to re-enter the United States and applied for admission as an LPR. (*Id.*) He was immediately detained by the Department of Homeland Security upon his arrival and served with a Notice to Appeal which charged him with abandoning his LPR status. (*Id.*) Accordingly, Petitioner was detained as an arriving alien pursuant to 8 U.S.C. § 1225(b). Petitioner has remained in detention since February 21, 2017. (DE 1 at 2.)

Petitioner subsequently filed an Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture ("CAT"). (DE 9-2 at 3.) On August 13, 2018, Petitioner's application was denied, and he was ordered removed from the United States. (*Id.* at 12.) On January 30, 2019, the BIA affirmed the IJ's decision. (DE 9-4.) During the pendency of Petitioner's appeal, he also filed a request for a change in custody status. (DE 9-3.) This request was denied because the IJ stated that there was "no jurisdiction" since Petitioner was an "arriving alien." (*Id.* at 1.)

On February 28, 2019, Petitioner filed a petition for review of the BIA's decision, as well as a motion for a stay of removal before the United States Court of Appeals for the Third Circuit. *See Adel G v. Attorney General United States of America*, No. 19-1475 (3d Cir. 2019). The Third Circuit granted Petitioner's motion for a stay, and that case remains pending. (DE 9-5.)

On June 6, 2019, Petitioner filed a petition for a writ of habeas corpus challenging his prolonged detention. (DE 1.) On March 13, 2020, I granted the petition to the extent of ordering the IJ to hold an individualized bond hearing. (DE 11, 12.)[2]

---

[2]   Respondent appealed, but later moved for voluntary dismissal. The Court of Appeals for the Third Circuit dismissed the appeal. *G. v. Warden Essex Cty. Correction*, No. 20-1988, 2020 WL 6588717 (3d Cir. Oct. 13, 2020).

b.  **Bond Hearing and BIA Appeal**

On March 19, 2020, the IJ conducted the bond hearing and, in a one-page order, denied a change in custody status and bond. (DE 18-2 at 9.) On March 26, 2020, Petitioner filed a notice of appeal. (DE 18-2 at 10.) The IJ then issued a formal "Bond Memorandum," detailing the reasons for denial of bond. (DE 18-2 at 12-15.)

The IJ held that the Department of Homeland Security ("DHS") "satisfied its burden of establishing that Respondent's continued detention is necessary as he is a flight risk and a danger to the community." (DE 18-2 at 14 (citing *Leslie v. Att'y Gen.*, 678, F.3d 265, 269-70).) In determining that Petitioner posed a risk to the community, the IJ relied upon a 2009-2010 New York Police Department ("NYPD") investigation asserting that Petitioner was attempting to assist individuals "travel to Yemen to join a training camp and prepare for jihad." (DE 18-2 at 15 (citing DE 18-2 at 77-80; DE 18-3 at 1-11.) The investigation also asserted that Petitioner had multiple conversations with a confidential informant about "obtaining firearms, becoming a trained marksman, and training with knives." (*Id.*) The IJ recognized that the investigation did not lead to criminal charges, but nevertheless expressed "concern" about what the investigation claimed to have uncovered (*Id.*)

In determining that Petitioner posed a flight risk, the IJ held that DHS demonstrated an "inconsistency" between the statement of Petitioner's family friend that she prepared a home where Petitioner would stay, and Petitioner's own statement that he would reside with his father in Michigan. (*Id.* (citing DE 18-2 at 24, 56)) The IJ also noted Petitioner's then- (and still-) pending appeal of his order of removal before the Third Circuit.

On October 23, 2020, Petitioner filed this motion, arguing that I should "enforce" my earlier order; Respondent, in his view, did not comply with that order because the hearing (and

subsequent BIA appeal) failed to comport with due process. (DE 18-1.) Respondent opposes the motion. (DE 19.) Petitioner has filed a reply. (DE 20.)

On October 30, 2020, however, after Respondent had already submitted its opposition but before Petitioner replied,[3] the BIA affirmed the IJ's denial of bond, finding that Petitioner did not demonstrate that the IJ's factual findings constituted clear error.[4] (DE 20-1 at 2-4.) The BIA found that the IJ "properly considered" the NYPD investigation reports. (*Id.*) The BIA acknowledged Petitioner's denial of any criminal activity, and noted that "no U.S. law enforcement agency has taken legal action against [Petitioner]" based on the NYPD investigation, but held that an IJ's use of such evidence, and evidence involving confidential informants, is permitted for danger determinations. (*Id.*). The BIA also noted that in 2009 (the time frame of the NYPD investigation), Petitioner left the United States for Yemen, and did not return to the U.S. until 2017, whereupon he was detained. (*Id.* at 4.) Determining that its danger determination was dispositive, the BIA declined to address Petitioner's arguments regarding risk of flight. (*Id.* at 2 n.3.)

### III.   ANALYSIS

#### a.   Jurisdiction

Respondent argues, as a threshold matter, that I do not have jurisdiction to review the immigration judge's discretionary determination. Respondent is technically correct; I do not have jurisdiction to order release Petitioner from detention, determine his entitlement to release, or second-guess the substance of the IJ's decision to deny bond. *Jean-Claude W. v. Anderson*, CV

---

[3]   Petitioner's reply incorporates discussion of the then-recent BIA decision. (DE 20.) On that subject, I have not found it necessary to require further briefing from the government.

[4]   Part of Petitioner's argument in the initial moving papers was that, although the bond hearing was held within 14 days as ordered, the delay of over 200 days on appeal to the BIA (which then was pending) further added to the unreasonable length of Petitioner's detention. (DE 18-1, at 3.)

4

19-16282, 2021 WL 82250 at *2 (D.N.J. Jan. 11, 2021); *Bravo v. Green*, 2017 WL 2268315 at *3 (D.N.J. May 24, 2017); *Pena v. Davies*, 2016 WL 74410 at *2 (D.N.J. Jan. 5, 2016); *see also* 8 U.S.C. § 1226(e) (immigration judge's discretionary determination regarding granting bond "shall not be subject to review" and no "court may set aside any action or decision ... regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole"). As Respondent recognizes, however, I do have jurisdiction to determine whether Petitioner was denied due process during his bond hearing, and, if so, to order that a new hearing be conducted. (DE 19 at 4 ("[T]he Court is limited to only reviewing challenges pertaining to the adequacy of process…").) *Claude W.*, 2021 WL 82250, at *2; *Bravo*, 2017 WL 2268315 at *3; *Pena*, 2016 WL 74410 at *2; *Harris v. Herrey*, 2013 WL 3884191 at *1 & n.3 (D.N.J. July 26, 2013).

I agree with Respondent that, to have jurisdiction to consider whether Petitioner was denied due process, I must confirm that Petitioner exhausted all available administrative remedies; if he has not, then I cannot review the merits of his claim. *Yi v. Maugans*, 24 F.3d 500, 503–04 (3d Cir. 1994); *see also Okonkwo v. I.N.S.*, 69 Fed. Appx. 57, 59–60 (3d Cir. 2003). I disagree with Petitioner's contention that "[e]xhaustion does not apply where a petition challenges immigration detention," (DE 20 at 2 n.1); the cited cases do not establish that blanket rule. Petitioner is correct that administrative exhaustion is not statutorily *required* in immigration bond matters; that is, "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Prudential exhaustion may be required by the court, however, under the following circumstances:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.*

But no matter. Because the BIA, at the final level of administrative review, affirmed the IJ's decision, I find that Petitioner did exhaust his administrative remedies. I thus take jurisdiction and proceed to analyzing whether the administrative proceedings comported with due process.

### b. Due Process

A district court may not review an IJ's discretionary determination to deny bond as such; the court may, however, review "the legal standard underlying immigration officials' actions and ... evaluate legal and constitutional claims on that basis." *Quinteros v. Warden Pike Cty. Corr. Facility*, 784 F. App'x 75, 77 (3d Cir. 2019) (stating that "[t]he Immigration and Nationality Act shields from review '[t]he Attorney General's discretionary judgment regarding the application' of the statute governing immigration detention" and recognizing that " '[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.' " (quoting 8 U.S.C. § 1226(e))); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 276 (3d Cir. 2018) ("[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

Petitioner brings a due process challenge. In bond hearings, as well as other adjudicative contexts, due process has three essential elements: "An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (internal citations and quotation marks omitted) (second alteration in original); *see also Quinteros*, 784 F. App'x at 78 (reiterating same standard).

1.  **The NYPD Reports**

Petitioner first argues that the IJ incorrectly found that DHS had met its burden by clear and convincing evidence. (DE 18-1 at 5.) This claim revolves around the IJ's consideration of the NYPD Reports. (DE18-2 at 80 through DE 18-3 at 11.)

Petitioner argues that the IJ, whose first encounter with the case was the bond hearing, "did not take the time to read the [NYPD] reports before or during the hearing and did not pause … to review the reports before rendering a decision." (*Id.* at 5-6.) If the IJ had read the reports, Petitioner contends, the IJ would have recognized the reports' inadequacy and inconsistencies. (*Id.* at 6-7.) Petitioner characterizes the reports as "one scammer (the CI trying to save his own skin), doing what the NYPD tells him to do, trying to set up someone he knows for a reduction in charges… ." (*Id.* at 7.) Petitioner reiterates that the investigation did not lead to any criminal charges, and attacks the IJ's invocation of "concern" as the incorrect standard.

Where, as here, the relief sought in administrative proceedings is discretionary, due process requires only that "evidence considered by the BIA be reliable and trustworthy." *Min Huang v. Att'y Gen. of U.S.*, 376 F. App'x 253, 255–56 (3d Cir. 2010). "[I]n the evidentiary context, fairness is closely related to the reliability of the evidence." *Ly v. Gonzales*, 134 F. App'x 581, 585–86 (3d Cir. 2005). As the Second Circuit has said, "the agency may consider an applicant's anti-social conduct—whether leading to a conviction ... or no legal judgment whatsoever—as an adverse factor in evaluating an application for discretionary relief." *Santiago v. Barr*, 832 F. App'x 74, 77 (2d Cir. 2020) (finding that the agency could consider pending charges from an arrest). Police reports, even those which do not lead to arrests or convictions, have regularly been permitted in immigration proceedings. *Zhouri v. Att'y Gen. U.S.*, 634 F. App'x 873, 875–76 (3d Cir. 2015) (rejecting petitioner's argument that the IJ should have

weighed the police reports and his testimony differently as an argument that "presents a factual or discretionary determination that we lack jurisdiction to review."); *Perez v. Barr*, 927 F.3d 17, 20–21 (1st Cir. 2019) ("…[A]n immigration court may generally consider a police report containing hearsay when making a discretionary immigration decision, even if an arrest did not result in a charge or conviction, because the report casts probative light on an alien's character."); *Padmore v. Holder*, 609 F.3d 62, 69 (2d Cir. 2010) (expressing "concern…regarding the reliance on the particular circumstances of a petitioner's arrest in light of the daunting practical difficulties associated with scrutinizing the facts underlying a conviction ... in the removal context," but recognizing the BIA's "authority to review police reports and complaints, even if containing hearsay and not a part of the formal record of conviction…") (citations omitted).

It is simpler to identify the narrow class of evidence which *does* potentially violate due process. For example, the Third Circuit found a consular document unreliable in *Ezeagwuna v. Ashcroft*, 325 F.3d 396 (3d Cir. 2003). There, the INS provided a State Department letter to the alien only several days before the hearing, and the letter, which contained multiple layers of hearsay, did not provide information from anyone with direct knowledge of the investigation, instead only setting forth "in a summary fashion" the results of a fraud investigation.

Here, the primary similarity to *Ezeagwuna* is that Petitioner's counsel stated that he had received the NYPD investigation records only on the morning of the bond hearing. (DE 20-1 at 12:25.) There is no indication, however, that counsel did not have time to digest the report, or that counsel requested a continuance.

In fact, at the time of his bond hearing, Petitioner had been well aware of the NYPD Reports for some 18 months. Counsel for DHS introduced the NYPD reports in evidence, and

8

summarized them in his Memorandum of Law, in connection with Petitioner's application for asylum and to withhold removal. (*See* DHS Memo, DE 18-3 at 13–14 (July 26, 2018); IJ Decision, DE 18-3 at 23 (Aug. 13, 2018).)

Unlike the letter in *Ezeagwuna*, the NYPD Reports specifically detail the evidence gathered by the investigating officer and cite statements of a confidential informant with direct knowledge. *See, e.g.*, *Min Huang v. Att'y Gen. of U.S.*, 376 F. App'x 253, 256 (3d Cir. 2010) (affirming BIA's use of report that was prepared by the same individual who conducted the investigation); *De Maria v. Att'y Gen. United States*, 826 F. App'x 232, 235–36 (3d Cir. 2020) (admission of criminal complaint, provided to petitioner three weeks before hearing, did not violate due process because the "detailed, thorough complaint was issued by a federal prosecutor in Brazil and contained excerpts of inculpatory conversations by the [petitioner]"); *cf. Lin v. Ashcroft,* 83 F. App'x 480, 485 (3d Cir. 2003) ("In addition to the multiple hearsay problems, the report and its supporting documentation are devoid of any description of how the investigation was conducted. There was nothing before the IJ to suggest who actually searched the hospital records, when the records were checked, what hospital records were reviewed and whether there were any identifying criteria—other than [petitioner's] name—used in searching the records.").

Petitioner's citation to *United States v. Leekins*, 493 F.3d 143, 149 (3d Cir. 2007), is unavailing. There, the Third Circuit upheld a criminal sentencing enhancement based on a factual finding that the defendant was responsible for attempted murder and assault on a police officer. *Id.* Petitioner cites *Leekins* for the proposition that a police report "from over ten years ago without further corroboration is not inherently reliable… ." (DE 18-1 at 8.) But in the very next sentence, the Third Circuit also said that "a police report also is not inherently *un*reliable." 493 F.3d at 149 (emphasis added). So we are well short of any general principle that an IJ's

decision to rely on a police report violates due process. And while it is true that the Reports are old, that may be because they date from 2009, when Petitioner returned to Yemen.

Sitting in review of the IJ, I must defer; I do not reweigh the evidence, but only correct defects serious enough to arise to a denial of due process. The IJ's decision to give credence to a report, summarizing an investigation and evidence, that was relied upon by the police in their own investigations, was within constitutional bounds. *See Medley v. Decker*, No. 18-CV-7361, 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) (affirming IJ's reliance upon four separate criminal complaints and accompanying police reports submitted by DHS where IJ "reviewed the evidence, heard arguments from both sides, and came to a legally permissible conclusion in light of the available evidence.").

There appears to be no dispute that Petitioner had the opportunity to place any and all relevant evidence before the IJ. As discussed above, due process in a bond hearing does not require evidence of convictions, or even arrests. DHS's evidence was far from overwhelming, and a different fact finder could have found differently. I cannot conclude, however, that the IJ and BIA violated due process in finding that Petitioner represented a danger to the community.

Nor can I agree with Petitioner's argument, made in reply, that the BIA's decision on appeal merely rubber-stamped the IJ's bond denial. (DE 20 at 2-4). The BIA reviewed the record carefully, expressed its own reasoning, and expanded upon the IJ's discussion. The BIA specifically considered and rejected Petitioner's arguments (repeated here) regarding the "motive and reliability of the confidential informant … [and] identification of [Petitioner] as the individual in Yemen," as well as Petitioner's denials of criminal activity and terrorism. (DE 20-1 at 4).

### 2. Less Restrictive Alternative to Detention

Petitioner also argues that the hearing violated his due process rights because the IJ (and later the BIA) failed to consider less restrictive alternatives to Petitioner's continued detention. (DE 18-1 at 10.) Indeed, as Petitioner recognizes, some district courts, including this one, have held that IJs should consider less restrictive alternatives to detention. *See Ousman D. v. Decker*, CV 20-9646, 2020 WL 5587441, at *4 (D.N.J. Sept. 18, 2020) (citing *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019).

As I held in a recent case, however, "*Ousman D.* involved a situation in which the petitioner was *not* found to be a danger to the community, [and was] denied release on bond solely because the IJ determined that he posed a flight risk." *Mohamed B. v. Decker*, No. CV 20-13178 (KM), 2020 WL 6707949, at *7 (D.N.J. Nov. 16, 2020) (emphasis in original). As in *Mohamed B.*, Petitioner does not identify any cases in this Circuit which impose a requirement of less restrictive alternatives to detention where, as here, an IJ has found both flight risk *and* danger. Accordingly, Petitioner's argument is rejected.

### 3. Bond Hearing Delay

Finally, Petitioner argues that Respondent failed to comply with my habeas order directing a bond hearing within 14 days. But the bond hearing I ordered *was* concededly held within 14 days. What Petitioner means is that over 200 days elapsed before the BIA decided Petitioner's appeal from the IJ's denial of bond. The proper remedy, says Petitioner, is his immediate release from detention. (DE 18-1 at 10.) This is a strained reading of my order, which directed a bond hearing within 14 days, not the completion of all administrative proceedings, including appeals (a difficult, if not impossible, feat). Moreover, even if Petitioner's

11

interpretation were correct, Petitioner cites no support for the contention that the delay would justify immediate release. This argument is therefore rejected.

### 4. Flight Risk

Petitioner challenges the IJ's flight risk reasoning, arguing that the IJ's concern about the uncertainty surrounding his place of abode was misplaced. (DE 18-1 at 8-9.) I agree with Petitioner that there was no serious inconsistency between Petitioner's sworn statement that he would reside with his father in a certain community in Michigan, and the affidavit of Petitioner's friend stating that Petitioner could, if he chose, reside with the friend in the same Michigan community.

I also agree with Petitioner that the pendency of a Third Circuit appeal is not properly considered to pose an increased risk of flight. I do note, however, the legitimate, related factor that Petitioner's challenges to his removal had been uniformly rejected to date, reducing his incentives to remain available if released. In short, the only thing now standing between Petitioner and removal is the Third Circuit's temporary stay. (DE 18-2 at 52.) It is an open question whether the speculative likelihood of success on that Third Circuit appeal, pending since February 2019, would suffice to deter flight.

Still, given that I am rejecting the due process challenge to the IJ's finding of danger, I will follow the BIA's lead and not further analyze the effect of any claimed errors on the determination of flight risk.

### 5. Other Due Process Arguments

I am unpersuaded by Petitioner's remaining arguments.

Petitioner argues that he was denied due process because the IJ completed only a cursory review of the NYPD records before rendering a short oral and written decision. (DE 20 at 5.)

12

That is an incomplete description of the process. DHS regulations permit a decision "orally or in writing of the reasons for the decision," and IJ bond decisions are generally issued orally, with a lengthier written decision rendered only in the event an appeal is filed. 8 C.F.R. § 1003.19(f); Immigration Court Practice Manual, Chapter 9.3(e)(vii) (https://www.justice.gov/eoir/page/file/1084851/download (last accessed April 7, 2021)). That is what happened here: Once an appeal to the BIA was filed, the IJ supplemented the initial bond order with a formal "Bond Memorandum," stating the applicable legal standards at length and detailing the reasons for denial. (DE 18-2 at 12-15.) Petitioner does not meaningfully challenge this procedure. Even if I credited Petitioner's contention that the IJ took just over a minute to review over a hundred pages of submissions, I would have to defer to the IJ's subsequent, detailed written decision, which included specific citations to the submissions.

Petitioner also challenges the IJ's invocation of "concern" regarding the danger and flight risk posed by Petitioner. (DE 18-1 at 8.) Petitioner is correct that "concern" is not a legal standard. But judicial *expressions* of "concern" are common, and do not signify a due process violation. *See, e.g. Padmore*, 609 F.3d at 69 (expressing "concern…regarding the reliance on the particular circumstances of a petitioner's arrest in light of the daunting practical difficulties associated with scrutinizing the facts underlying a conviction ... in the removal context"). I will not flyspeck the IJ's choice of expression, because there is no indication that either the IJ or the BIA mistook the governing legal standard. Far from *merely* expressing concern, both the IJ and BIA correctly identified the "clear and convincing" standard of proof and the governing law, and applied those standards in their decisions. (*See* DE 18-2 at 12–15 (IJ); DE 21-2 at 3–4 (BIA).)

For these reasons, too, I find that the bond hearing and BIA appeal comported with due process.

## IV. CONCLUSION

For the above reasons, Petitioner's motion to enforce judgment is denied. An appropriate Order follows.

Dated: April 8, 2021

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge